UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

RICHARD ARMENTA,
CDCR #G-39318,

                                    Plaintiff,

        vs.

D. PARAMO, et al.,

                                    Defendants.

Case No.:  3:16-cv-02931-BTM-KSC

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS FIRST AMENDED COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO
Fed. R. Civ. P. 12(b)(6)**

**[ECF Nos. 43, 44]**

        Richard Armenta ("Plaintiff"), currently incarcerated at California State Prison, Sacramento, is proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

        Plaintiff claims two nurses and various correctional officials at Richard J. Donovan Correctional Facility ("RJD") violated his Eighth and Fourteenth Amendment rights in 2015 while he was incarcerated there after random urinalysis revealed he tested positive for morphine. Plaintiff alleges Defendants denied him due process during the disciplinary hearing and appeals that followed, and imposed cruel and unusual punishment upon him by failing to acknowledge he had been duly prescribed Tylenol with codeine just two days

///

before the test, which he contends caused the "false positive" for morphine. *See* Amend. Compl. ("FAC"), ECF No. 30 at 1-26.

## I. Procedural Background

Currently pending before the Court are two Motions to Dismiss Plaintiff's FAC pursuant to Fed. R. Civ. P. 12(b)(6).[1] The first is filed by Defendant G. Wiley, who is alleged to have been employed as a nurse at RJD at the time of Plaintiff's disciplinary infraction. *See* ECF No. 43. The second is filed by Defendant Zamora, another RJD nurse, together with Defendants Paramo, Stratton, Covel, Williams, Sanchez, Salinas, Lopez, Murphy, and Frost, all of whom are alleged to be RJD correctional and appeals officials involved in Plaintiff's disciplinary proceedings. *See* ECF No. 44.

On November 6, 2017, the Court set a briefing schedule for both Defendants' Motions, *see* ECF No. 46; but on January 22, 2018, it granted Plaintiff's request for an extension of time in which to file his Oppositions. *See* ECF No. 52. On February 16, 2018, Plaintiff filed a single Response in Opposition to both Defendants' Motions, *see* ECF No. 53, and on February 27, 2018, all Defendants filed their Replies. *See* ECF Nos. 54, 55. The Motions now are fully-briefed, and require no oral argument. *See* S. D. Cal. CivLR 7.2.d.1.

Having carefully considered both Motions, Plaintiff's FAC, the exhibits attached, his Opposition, and Defendants' Replies as submitted, the Court **GRANTS** both Motions to Dismiss Plaintiff's FAC pursuant to Fed. R. Civ. P. 12(b)(6) (ECF Nos. 43, 44) based on his failure to state either an Eighth or a Fourteenth Amendment claim upon which § 1983 relief can be granted. Because the Court also finds Plaintiff's Eighth and Fourteenth Amendment claims could not be cured by alleging additional facts, the Court **DENIES** leave to amend as futile.

///

---

[1] Plaintiff was granted leave to amend his original Complaint after, and in response to, Defendant Covel, Frost, Lopez, Paramo, Salinas, Sanchez, Stratton, Williams and Zamora's previous Motion to Dismiss on July 21, 2017. *See* ECF No. 23.

## II.    Plaintiff's Allegations

On March 3, 2015, at approximately 11:20 a.m., Plaintiff claims Correctional Officer Lopez ordered him to submit to random urinalysis "for the purpose of drug testing" pursuant to Cal. Code Regs., tit. 15 § 3290(c)(4). *See* FAC, ECF No. 30 at 4, 35. Plaintiff complied, but contends he was "at the time prescribed Tylenol 3 with codeine," which can cause a "false positive" for morphine. *Id.* at 4-5.[2]

On March 12, 2015, after the samples had been submitted to National Toxicology Laboratories, Inc., the results were returned to RJD's Investigative Services Unit indicating that Plaintiff's March 3, 2015 sample did in fact test positive for morphine. *Id.* at 4, 35, 38, 41.

Upon receipt of these results, Lopez contacted Defendant Zamora, Facility B's licensed clinical nurse, who pursuant to Cal. Dept. of Corrections & Rehab., Operations Manual ("DOM") § 52010.23, "confirmed that [Plaintiff] was not prescribe[d] medication which would cause a positive result on a random urinalysis test specifically; for Morphine … for the specified time frame." *Id.* at 4, 18, 35, 38.[3]  Plaintiff further contends Defendant

---

[2] Cal. Dept. of Corr. & Rehab., OPERATIONS MANUAL ("DOM") § 52010.18, governing "Urine Sample Collection Procedures" provides that "[a]n inmate claiming the urine test may be affected by a prescription medication shall be offered a CDCR 7385, Authorization for Release of Protected Health Information form, in order for staff to obtain a copy of his/her Medication Administration Record ("MAR") for later review under section 52010.23." *Id.* However, "[t]he inmate will still be required to provide a urine sample." *Id.*

[3] In March 2015, DOM § 52010.23 provided that:

> Medical staff authorized by the institution's Health Care Manager shall review the medical records of those inmates with confirmed positive test results to determine whether prescription medications were the cause for the positive results. If medical staff determine that authorized prescribed medication caused the positive test results, no disciplinary action shall be taken.

CDCR DOM § 52010.23 (updated through Jan. 1, 2015).

G. Wiley, a nurse employed at RJD, also "provided false information" on an "Informational Chrono" dated "March 12 @ 9:30" indicating that "[p]rior to 3/03/15 [Plaintiff] was/not prescribed medication which could cause a positive result on a random urinalysis test. Specifically AMPH/METH, MORPH, CODN, THC & PHENOBARBITAL." *Id.* at 6-7, 17-18, 42 (underlined words circled in original).

Plaintiff claims Officer Lopez also "took it upon himself to review a nurse drug handbook," which noted that "the half[-]life for Morphine Hydrochloride" is "approximately two (2) to three (3) hours," while the half[-]life for Tylenol with Codeine "is two (2) to nine (9) hours," and on March 12, 2015, issued Plaintiff an "erroneously falsified" CDCR 115, Serious Rules Violation ("RVR"), Log No. FB-15-101, charging him with violating Cal. Code Regs., tit. 15 § 3016(a) "Use of Morphine based on Positive Urinalysis." *Id.* at 4-5, 18, 35.

On March 19, 2015, Plaintiff claims Defendant Salinas, a Correctional Sergeant, "participated directly" in violating his due process rights by approving and signing RVR Log No. FB-15-101, failing to supervise his subordinates, and failing to "correct" or "remedy the wrong." *Id.* at 5-6, 19, 35.

On or about April 5, 2015, Plaintiff claims Defendant Williams, a Correctional Lieutenant, served as the Senior Hearing Officer ("SHO") presiding over his RVR hearing. *Id.* at 8-9, 35-49, Ex. 1. During that hearing, Plaintiff claims Williams "denied [him] a staff assistant" despite his "TABE score of 0,"[4] "refused to acknowledge [he] had a valid prescription for Tylenol 3, which causes a positive urinalysis for morphine," *Id.* at 8, 36-40, 44, "would not accept [a] MAR which listed [his] last dose of codeine as 3-1-2015," *id.* at 44, "would not consider two general chronos" in his dated February 24, 2015, and

---

[4] "The TABE (Tests of Adult Basic Education) scores reflect an inmate's educational achievement level and are expressed in numbers reflecting grade level." *Reynaldo v. Arnold*, 2017 WL 3981602, at *3 (E.D. Cal. 2017) (citing *Marcelo v. Hartley*, 2008 WL 4057003, *4 n.7 (C.D. Cal. 2008); *In re Roderick*, 154 Cal. App. 4th 242, 253 n. 5, 257 n. 10 (2007)).

March 2, 2015, both of which noted his prescription for codeine and recommended no disciplinary action be taken based on previous positive test results, *id.* at 47, "did not allow" him to cross-examine Defendant Wiley or to call Nurse McArthur as a witness, *id.* at 8-9, 43, did not permit him to introduce evidence from "askdocWeb.com" to prove that "acetaminophen w/codeine would cause a false positive for morphine," *id.* at 9, 50, and "did not allow [him] to introduce as evidence a memorandum by the Director of the CDCR, MD Stainer" which "indicat[ed] the proper procedures" for custody staff to follow "if the inmate contends the positive results" were the "result of prescribed medication." *Id.* at 9, 45.

Plaintiff's exhibits further show he initially requested three witnesses at the April 5, 2015 RVR hearing: Defendant Lopez, as the reporting employee, and two Registered Nurses, Valencia and Wahlberg; however, he waived the presence of both Lopez and Walhberg prior to the hearing, on March 29, 2015. *Id.* at 37.

Defendant Williams found Plaintiff guilty of violating Cal. Code Regs., tit. 15 § 3016(a) "based on a preponderance of evidence presented and considered at [the] hearing." *Id.* at 38-39, Ex. 1. That evidence included: Defendant Lopez's March 19, 2015 RVR, *id.* at 35, 38; Nurse Wiley's Informational Chrono, *id.* at 39, 42; and National Toxicology Laboratories' March 12, 2015 urinalysis results, which showed Plaintiff's March 3, 2015 specimen "showed positive results for morphine, a controlled substance." *Id.* at 39. Williams also considered Plaintiff's plea of "not guilty" based on his claim of having been prescribed Tylenol 3 with codeine, and called RN Valencia as a witness. Valencia reviewed Plaintiff's MAR, and confirmed his last dose of Tylenol 3 was taken two days before his urinalysis sample on March 1, 2015 at 7:30 a.m. *Id.* at 37. In response to questions posed by both Plaintiff and Williams, Valencia stated she did not know if the Tylenol 3 "would still be in [Plaintiff's] system as of March 3, 2015," or if so, whether "the UA results would [have also] show[n] a positive for codeine," but she also testified that "the drug book [she] reviewed" indicated that the "maximum life of codeine is seventy two (72) hours[,] and that's on a good day." *Id.*

As a result of this disciplinary conviction, and in light of his having been found guilty of six prior "similar offenses" dating from 2004 through 2014 at Avenal, Ironwood, and RJD, Plaintiff was assessed a 90-day loss of behavioral credit, quarterly packages, special purchases, canteen, and dayroom privileges, was placed on "C" status during that same time,[5] confined to quarters for 10 days, and denied contact visits for 180 days, followed by an additional 180 days of "non-contact visiting only." *Id.* at 39-40. Plaintiff was also ordered to provide a "minimum of four (4) random [drug] tests per month" for one year, cautioned that "a refusal or a positive test would result in the issuance of a CDC 115," and referred to the ICC/UCC for SAP consideration.[6] *Id.* at 40.

On April 20 and 24, 2015, Plaintiff alleges Defendant Sanchez, a Correctional Captain, and Associate Warden Covel, the "Chief Disciplinary Officer … in charge of reviewing RVR hearings," both "approved the disposition" of RVR Log No. Log No. FB-15-101 by "signing and dating" it. *Id.* at 10, Ex. 1 at 35.

On April 27, 2015, Plaintiff contends Warden Paramo received a letter written by Plaintiff's mother and objecting to his disciplinary conviction based on his "valid prescription of Tylenol and codeine." *Id.* at 13. Plaintiff claims Paramo responded by

---

[5] Plaintiff claims that as a results of his having been placed on "C" status, he was also required to "send home all [his] appliances," including his TV and radio, was not allowed to work and/or earn good time credits, and "missed his kids birthday." *See* ECF No. 30 at 4, 6, 9-10, 19, 22, 23, 26-28; *see also* Cal. Code Regs., tit. 15 § 3190(k)(2).

[6] "ICC" and "UCC" are acronyms for Institutional and/or Unit Classification Committees. *See Ashker v. Brown, et al.*, 2018 WL 1536739, at *2 (N.D. Cal. 2018); Cal. Code Regs., tit. 15 § 3315(g) ("Any serious disciplinary action requiring reconsideration of an inmate's program, work group, or housing assignment, shall be referred to the next reasonably scheduled classification committee for review."); Cal. Code Regs., tit. 15 § 3376(d)(2)(A) ("Unit Classification Committees shall: (A) Review each inmate's case at least annually to consider the accuracy of the inmate's classification score, custody designation, program, work and privilege group, and facility placement, including recommendation for transfer."). "SAP" appears to refer to a Substance Abuse Treatment Program. *See* Cal. Code Regs., tit. 15 § 3040.1(a), (b).

"stating [that] the disciplinary actions taken [were] within policy" and complied with Title 15. *Id.* at 13-14. Plaintiff alleges Paramo therefore "was clearly aware unconstitutional practices were occurring," but nevertheless "failed to act." *Id.* at 14

On May 21, 2015, Plaintiff filed CDCR 602 Inmate/Parolee Appeal Log No. RJD-B-15-02283, challenging the validity of his disciplinary conviction on the same due process grounds now raised in his FAC, and requesting that RVR Log No. FB-15-101 be vacated and dismissed in the interest of justice. *Id.*, Ex. 2 at 54-55. The first level of administrative review was bypassed, and on July 2, 2015, Plaintiff was interviewed by Defendant Frost, a Correctional Lieutenant, whom Plaintiff claims "failed to correct the violations." *Id.* at 11. Plaintiff's Second Level Appeal was then reviewed, denied, and signed by Defendant G. Stratton, RJD's Chief Deputy Warden, on July 7, 2015. *Id.*, Ex. 2 at 57, Ex. 3 at 60.

On August 28, 2015, Plaintiff appealed to the Third Level, asking for a "review [of] all the evidence," and the re-instatement of his privileges. *Id.* at 11, Ex. 2 at 57. The Third Level Appeal of CDCR 602 Log No. RJD-15-02283 was again denied on November 5, 2015, by Defendant Murphy, an Appeals Examiner, and M. Voong, Chief of the CDCR's Inmate Appeals Branch.[7] *Id.* at 11-12, Ex. 3 at 61-62.

On February 17, 2016, Plaintiff filed a writ of habeas corpus in San Diego County Superior Court Case No. HSC 11448 "challenging [his] RVR." *Id.* at 12. On April 6, 2016, the Honorable Judge Stephanie Sontag ordered the CDCR to file an informal response. *Id.* at 12-13; *see also* Ex. 5 at 63-65. On August 22, 2016, the CDCR "reviewed the underlying disciplinary matter," dismissed Plaintiff's RVR "in the interest of justice," and restored his custody credits, but "ma[d]e no mention of [his] visiting privileges." *Id.* at 13; *see also* Ex. 6 at 68. Since "no further relief [wa]s available," Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging Defendants violated his Eighth and Fourteenth Amendment rights during, and as the result of, his disciplinary conviction. *Id.* at 13.

---

[7] M. Voong is not named as a Defendant.

Specifically, Plaintiff contends Defendants Williams, Lopez, Zamora, and Wiley all failed to afford him "procedural due process" by "falsely" charging him with a RVR and during his disciplinary proceedings, and acted with "deliberate indifference" to the "cruel and unusual" punishments he faced as a result, *id.,* at 16-19, 21-23, and Defendants Sanchez, Salinas, Covel, Frost, Paramo, Stratton, and Murphy all failed to correct and/or act to remedy those violations by approving them as part of the RVR process, or when reviewing his CDCR 602 appeal. *Id.* at 19-23. Plaintiff seeks declaratory and injunctive relief restoring his visitation privileges, as well as compensatory and punitive damages against each Defendant. *Id.* at 24-31.

## III. Defendants' Motions to Dismiss

### A. Arguments

All Defendants seek dismissal of Plaintiff's FAC as to the Fourteenth Amendment due process claims related to his disciplinary conviction because he alleges no facts sufficient to show the deprivation of any liberty or property interest sufficient to invoke due process protection. *See* ECF No. 43 at 9-13; ECF No. 44-1 at 15-21.

Defendants Zamora, Paramo, Stratton, Covel, Williams, Sanchez, Salinas, Lopez, Murphy, and Frost also seek dismissal of Plaintiff's Eighth Amendment claims arguing that his FAC fails to allege facts sufficient to show the disciplinary punishment imposed constituted an objectively and sufficiently serious deprivation, or that any of them acted with deliberate indifference to any serious risk of harm, ECF No. 44-1 at 22-24; Defendant Paramo argues Plaintiff's FAC fails to allege facts sufficient to show he was personally involved, and therefore, liable for any constitutional violation, *id.* at 24-25; and Defendants Frost, Stratton, and Murphy argue their role in reviewing Plaintiff's disciplinary appeal is insufficient to show they personally violated any of his constitutional rights. *Id.* at 25-26. Finally, Defendants contend Plaintiff's claims for injunctive relief are moot, and declaratory relief in unavailable. *Id.* at 26-27.

///

///

3:16-cv-02931-BTM-KSC

### B. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *Bryan v. City of Carlsbad*, __ F. Supp. 3d __, 2018 WL 1400712, at *3 (S.D. Cal. Mar. 20, 2018).

Because Rule 12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive merits, "a court may [ordinarily] look only at the face of the complaint to decide a motion to dismiss," *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002), including the exhibits attached to it. *See* FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978) ("[M]aterial which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss.) However, exhibits that contradict the claims in a complaint may fatally undermine the complaint's allegations. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (a plaintiff can "plead himself out of a claim by including . . . details contrary to his claims.") (citing *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) (courts "are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."))); *see also Nat'l Assoc. for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (courts "may consider facts contained in documents attached to the complaint" to determining whether the complaint states a claim for relief).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Villa v. Maricopa Cty.*, 865 F.3d 1224, 1228-29 (9th Cir. 2017). A claim is facially

plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility requires pleading facts, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, which rise above the mere conceivability or possibility of unlawful conduct. *Iqbal*, 556 U.S. at 678-79; *Somers v. Apple, Inc.*, 729 F.3d 953, 959-60 (9th Cir. 2013). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. While a pleading "does not require 'detailed factual allegations,'" Rule 8 nevertheless "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Therefore, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and quotes omitted); *accord Lacey v. Maricopa Cnty.*, 693 F.3d 896, 911 (9th Cir. 2012) (en banc). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

C.   Fourteenth Amendment – Due Process

The Fourteenth Amendment provides that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Wright v.*

*Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

A prisoner is entitled to certain due process protections when he is charged with a disciplinary violation. *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 564-571 (1974)). "Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken." *Id.* These procedural protections, however, "adhere only when the disciplinary action implicates a protected liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

Although the level of the hardship must be determined on a case-by-case basis, and "[i]n *Sandin's* wake the Courts of Appeals have not reached consistent conclusions for identifying the baseline from which to measure what is atypical and significant in any particular prison system," *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005), courts in the Ninth Circuit look to:

> 1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez*, 334 F.3d at 861 (quoting *Sandin*, 515 U.S. at 486-87); *see also Chappell v. Mandeville*, 706 F.3d 1052, 1064-65 (9th Cir. 2013). Only if the prisoner alleges facts sufficient to show a protected liberty interest must courts next consider "whether the procedures used to deprive that liberty satisfied Due Process." *Ramirez*, 334 F.3d at 860.

In this case, Defendants Lopez, Zamora, and Wiley first seek dismissal of Plaintiff's due process claims to the extent Plaintiff alleges they provided "false" information related to his urinalysis results. *See* ECF No. 44-1 at 15-16; ECF No. 43 at 9-10. Specifically,

Plaintiff claims both Nurses Wiley and Zamora falsely reported that he had not been prescribed any medication that would test positive for morphine at the time his urine was sampled on March 3, 2015, *see* ECF No. 30 at 4, 6-7, 17-18, 35, 38, 42, and that Officer Lopez "erroneously falsified" the March 12, 2015 RVR by including that information in CDC 115 RVR Log No. FB-15-1-101. *Id.* at 4, 5, 18, Ex. 1 at 35.

Insofar as Plaintiff challenges the issuance of his RVR on grounds that it relied, in part, on information culled from his medical records, and came to what he contends was a false conclusion as to the amount of time Tylenol 3 with codeine might remain in his system, and therefore account for a his positive test for morphine, the Court finds he has failed to state a plausible due process claim. *Iqbal*, 556 U.S. at 678; *Murschel v. Paramo*, 2018 WL 539159, at *5 (S.D. Cal. 2018) ("The issuance of a false RVR, alone, does not state a claim under section 1983.") (citing *Dawson v. Beard*, 2016 WL 1137029, at *5-6 (E.D. Cal. 2016)). Instead, claims of arbitrary action by prison officials must grounded in "'the procedural due process requirements as set forth in *Wolff v. McDonnell*.'" *Murschel*, 2018 WL 539159, at *5 (citing *Ellis v. Foulk*, 2014 WL 4676530, at *2 (E.D. Cal. 2014) (quoting *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984))). "[T]here is no due process right to be free from false disciplinary charges," *Solomon v. Meyer*, 2014 WL 294576, at *2 (N.D. Cal. 2014), because "[t]he Constitution demands due process, not error-free decision-making." *Chavira v. Rankin*, 2012 WL 5914913, at *1 (N.D. Cal. 2012); *see also Johnson v. Felker*, 2013 WL 6243280, at *6 (E.D. Cal. 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a [rules violation] report does not give rise to a claim under section 1983.") (citing *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) and *Freeman v. Rideout*, 808 F.2d 949, 951-53 (2d Cir. 1986)).

Second, all moving Defendants argue that Plaintiff's due process claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because he fails to allege facts sufficient to show that any of the deprivations he suffered as a result of his disciplinary conviction imposed the type of "atypical and significant hardship" required to invoke a liberty interest

requiring *Wolff's* procedural safeguards. *See* ECF No. 44-1 at 16-22; ECF No. 43 at 10-13. Specially, Defendants argue Plaintiff enjoys no right to work or behavioral credits, contact visitation, yard, canteen, or quarterly packages, and therefore none of the disciplinary punishments imposed as a result of RVR Log No. FB-15-101 "trigger the due process clause" and thereby entitle him to the procedural protections required by the Fourteenth Amendment. *Id.*

The Court agrees that while Plaintiff has alleged his disciplinary conviction resulted in a 90-day loss of credit, quarterly packages, special purchase, canteen, and other privileges as a result of his "C" status designation, a 10-day confinement to quarters, and a 180 day loss of visitation privileges, *see* ECF No. 30 at 6, 9-10, 19, 21, 26-28, Ex. 1 at 39-40, these deprivations do not "present[] a dramatic departure from the basic conditions of [Plaintiff's] indeterminate sentence," and therefore did not cause any "atypical" or "significant hardship … in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 584-85; *see also* ECF No. 44-2, Ex. 1.[8]

_____

[8] The Court grants Defendant Stratton, Salinas, Sanchez, Paramo, Covel, Frost, Zamora, Williams, Lopez, and Murphy's Request to take judicial notice of Plaintiff's certified Abstract of Judgment and Prison Commitment from the Imperial County Superior Court in *People v. Armenta*, Criminal Case No. JCF18905, dated September 13, 2010, a public record, which reflects the imposition of a sentence for 25 years to life for first degree murder in violation of Cal. Penal Code § 187(a). *See* ECF No. 44-2, Ex. 1 at 4-10. In his Opposition, Plaintiff asks the Court to either "ignore" his Abstract of Judgment or "convert [Defendants'] motion into a motion for summary judgment." *See* ECF No. 53 at 40. However, the Court may take judicial notice of undisputed matters of public record when ruling pursuant to Fed. R. Civ. P. 12(b)(6). *See* Fed. R. Evid. 201 (allowing a court to take judicial notice of a fact "not subject to reasonable dispute in that it is ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" when considering a 12(b)(6) motion); *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (court "'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'") (citation omitted).

As to his credit forfeiture, Plaintiff is serving an indeterminate term of 25 years to life; therefore, the initial loss of 90 days of good time credits (since restored) does not "invariably affect the duration of [his] sentence," *Ramirez*, 334 F.3d at 861, and is insufficient to create a protected liberty interest. *Sandin*, 515 U.S. at 486-87. In California, "[c]redits earned by an inmate serving an indeterminate life sentence with the possibility of parole, … go toward advancing only the inmate's MEPD [Minimum Eligible Parole Release Date], *i.e.*, the earliest date on which he could legally be released on parole," *Roberts v. Warden*, 2017 WL 5956666, at *4 (C.D. Cal. 2017), but they "have no real impact on the actual sentence eventually set … or on [the inmate's] eventual release date on parole, should that time ever come." *Roman v. Knowles,* 2011 WL 3741012, at *12 n.9 (S.D. Cal. 2011) (noting that the MEPD "does not set an actual parole release date. Rather, [it] determines when [a prisoner] may appear before the Board of Parole Hearings (BPH) for his first parole suitability hearing. The BPH, in turn, has the exclusive authority to grant plaintiff parole and set any actual parole release date."), *report and recommendation adopted,* 2011 WL 3741007 (S.D. Cal. 2011).

In his Opposition, Plaintiff claims his MEPD is "use[d] to be 3-2030" and is now "January 28, 2031," that any time [he] loses good time credits his MEPD changes," this "affects [his] … chance to go for parole eligibility," and that had he not "been on non-credit earning status," for 90 days as a result of RVR Log No. FB-15-101, he "would have been going to see the parole board sooner." *See* ECF No. 53 at 37, 40, 53. However, a California prisoner's "concern about future parole hearings based on [the] 'collateral consequences'" of a disciplinary conviction "is speculative and cannot support a liberty interest." *Slaughter v. Cate*, 2014 WL 5474025, at *5 (N.D. Cal. 2014) (citing *Sandin*, 515 U.S. at 487) (although disciplinary conviction may not help inmate seeking release on parole, it is only one of "myriad of considerations" relevant to parole decision and does not inevitably affect the length of the prisoner's sentence); *Ramirez*, 334 F.3d at 858-59.

Moreover, the loss of other privileges as a result of Plaintiff's "C" status placement, including his need to "send home all [his] appliances," lost yard time, quarterly packages,

and phone or canteen access for 90 days does not constitute "atypical and significant" hardship under *Sandin.* See ECF No. 30 at 4, 6, 53 (citing Cal. Code Regs., tit. 15 § 3044(f)(2) (describing "Privilege Group C" "privileges and non-privileges")); *Sandin*, 515 U.S. at 484; *see also Sanchez v. Miller*, 2016 WL 536890, at *5 (S.D. Cal. 2016) ("C-status deprivations were limited in duration and type, and these limited deprivations do not constitute a hardship that is atypical and significant 'in relation to the ordinary incidents of prison life.'"), *report and recommendation adopted,* 2016 WL 524438 (S.D. Cal. 2016); *Randle v. Melendrez*, 2017 WL 1197864, at *4 (C.D. Cal. 2017) (finding "four months in administrative segregation as a result of the false RVR," during which plaintiff was deprived of contact visits, "packages, canteen, unrestricted yard, phone calls and personal property" insufficient to implicate a protected liberty interest under *Sandin*), *report and recommendation adopted*, 2017 WL 1199719 (C.D. Cal. 2017); *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987) ("[A] prisoner has no constitutional right to a particular classification status"); *Wyatt v. Swearingen*, 2010 WL 135322, at *8-9 (N.D. Cal. 2010) (no liberty interest in prisoner's year-long C-status placement); *Washington v. Cal. Dep't of Corrs. & Rehab.*, 2010 WL 729935, at *1 (E.D. Cal. 2010) (no liberty interest in delayed release from C-status); *see also Steffey v. Orman*, 461 F.3d 1218 (10th Cir. 2006) (restriction on inmates' ability to receive money from outside sources was not an "atypical or significant hardship" under *Sandin*); *Cosco v. Uphoff*, 195 F.3d 1221, 1224 (10th Cir. 1999) (dismissing due process challenge to policy limiting amount of property state prisoners could keep in their cells); *Martin v. Hurtado*, 2008 WL 4145683, at *13 (S.D. Cal. 2008) ("Plaintiff's Complaint fails to state a procedural due process claim because the deprivation of his television does not pose an 'atypical and significant hardship' when compared to the 'ordinary incidents of prison life.'") (quoting *Sandin*, 515 U.S. at 484); *Owens v. Ayers*, 2002 WL 73226, at *2 (N.D. Cal. 2002) (dismissing prisoner's deprivation of personal property claim under both *Sandin* and pre-*Sandin* analysis).

///

3:16-cv-02931-BTM-KSC

Finally, while the Court is sympathetic to Plaintiff's claim that the "loss of contact visits with [his] family [and] kids … can never be returned," *see* ECF No. 53 at 9, and acknowledges it caused him significant emotional hardship, *id.*; *see also* ECF No. 30 at 15, he has no freestanding constitutional right to contact or conjugal visits. *See Gerber v. Hickman*, 291 F.3d 617, 621 (9th Cir. 2002). The Supreme Court has expressly held that the loss of visitation privileges for a limited duration is simply "within the range of confinement to be normally expected for one serving [an indeterminate sentence]," and therefore, not "atypical." *Overton v. Bazzetta*, 539 U.S. 126, 137 (2003) (finding prisoner's 2-year loss of visitation privileges as the result of substance abuse violations did not violate due process because it was "not a dramatic departure from accepted standards for conditions of confinement.") (citing *Sandin*, 515 U.S. at 485, 487); *Davis v. Small*, 595 Fed. App'x 689, 691-92 (9th Cir. 2014); *Higdon v. Ryan*, 2014 WL 1827156, at *5 (D. Ariz. 2014) (noting that the "loss of contact visitation cannot form the basis for an independent due process violation," and dismissing claims that the denial of contact visitation was a "significant and atypical hardship" under *Sandin*).

Moreover, even if the Court were to find Plaintiff's deprivations legally sufficient to invoke a protected liberty or property interest under *Sandin*, his FAC also fails to plead facts to plausibly show he was denied the process that was due. *See Iqbal*, 556 U.S. at 678; *Ramirez*, 334 F.3d at 860 (citations omitted); *see also Brown v. Oregon Dep't of Corr*., 751 F.3d 983, 987 (9th Cir. 2014). With respect to his disciplinary conviction, those procedures include: (1) written notice of the charges at least 24 hours before the disciplinary hearing; (2) a written statement by the fact-finder of the evidence relied on and reasons for the disciplinary action; (3) the right to call witnesses and present documentary evidence if doing so will not jeopardize institutional safety or correctional goals; (4) the right to appear before an impartial body; and (5) assistance from fellow inmates or prison staff in complex cases. *Wolff*, 418 U.S. at 563-72; *Serrano*, 345 F.3d at 1079-80.

Plaintiff was noticed more than 24 hours prior to his April 5, 2015 RVR hearing, given a written statement of the charges, and a copy of the toxicology results supporting

the charge that he possessed morphine in violation of Cal. Code Regs., tit. 15 § 3016(a); he appeared personally at the hearing, and was provided an opportunity to defend. *See* ECF No. 30, Ex. 1 at 36-37. In fact, while Plaintiff claims SHO Williams "denied [him] a staff assistant … knowing [he] ha[d] a 0 TABE score," ECF No. 30 at 8, his own exhibits show Williams personally verified that he "was able to articulate a clear understanding of the charge," "had a good command of the English language," "ask[ed] pertinent questions," and "provid[ed] appropriate responses to questions posed to him" on the day of the hearing. *Id.* at 36. Moroever, Plaintiff's exhibits further show he *was* assigned a staff assistant who reviewed his C-file, and who discovered his TABE score had been recorded as a 0 because "he had not taken the TABE test." Plaintiff's RVR also notes he "waived his right to have a staff assistant present" at the April 5, 2015 RVR hearing. *Id.* at 36. In addition, Plaintiff requested Defendant Lopez and two RNs (Valencia and Wahlberg)[9] as witnesses, but he waived Lopez's presence as the reporting employee, and did call Valencia to testify on his behalf. *Id.* at 37. In response to Plaintiff's questions, and in his defense, Valencia admitted Plaintiff's MAR showed he had been duly prescribed, and had last taken a dose of Tylenol 3 with codeine two days prior to his urinalysis, and that the "maximum life of codeine is seventy-two (72) hours." *Id.* However, based on Defendant Lopez's RVR, Plaintiff's toxicology results, Nurse Zamora and Wiley's review of his medical records, and Valencia's testimony, Defendant Williams nevertheless found Plaintiff guilty of using morphine "based on a preponderance of [the] evidence presented." *Id.* at 38.

---

[9] In the section of Plaintiff's CDCR 602 Inmate/Parolee Appeal Form, Log No. RJD-B-15-02283, in which Plaintiff is asked to explain his dissatisfaction with the Second Level Response, Plaintiff denies ever having "requested a witness [named] Walberg," or even "know[ing] who that is." *See* ECF No. 30, Ex. 2 at 56. Because Plaintiff's RVR describes "Walberg" as a "Registered Nurse," and Plaintiff's FAC includes no allegations against any nurse named Walberg, but does allege Defendant Wiley is one of the nurses who "provided false information to custody" regarding his prescribed medications, *id.* at 6-7 & Ex. 1, Attach. 1 at 42, Defendant Wiley surmises "Nurse Walberg" may be a "misprint of 'Nurse Wiley.'" *See* ECF No. 43 at 7 n.3.

Plaintiff also fully challenged both the validity and the procedures attendant to his disciplinary hearing via CDCR 602 Inmate/Parolee Appeal, Log No. RJD-B-15-02283. *See id.*, Ex. 3 at 54-62. In fact, Plaintiff ultimately succeeded in having RVR Log No. RJD FB-15-101 dismissed in the interests of justice and his behavior credits restored via state habeas proceedings. *Id.,* Ex. 5 at 68-70. *Cf. Frank v. Schultz*, 808 F.3d 762, 764 (9th Cir. 2015) (affirming summary judgment on due process claims regarding the loss of 14 days of good-time credits because "any procedural error was corrected through the administrative appeal process," through which the prisoner's credits had already been restored) (citations omitted).

Finally, Plaintiff argues his "RVR was unsupported by evidence," *see* ECF No. 52 at 36, but again his exhibits plainly contradict that conclusion. *See* ECF No. 30, Ex. 1 at 35-49; *Steckman*, 143 F.3d at 1295-96. *Wolff* does not require either judicial review or a "specified quantum of evidence" to support the fact-finder's decision. *Superintendent, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 454 (1985). Rather, a prison disciplinary board's findings will not violate due process so long as they "are supported by some evidence in the record." *Id.* at 454-55. The "some evidence" standard is "minimally stringent," and a decision must be upheld if there is any reliable evidence in the record that could support the conclusion reached by the fact finder. *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir. 1994) (citing *Hill*, 472 U.S. at 455-56).

Here, the exhibits attached to Plaintiff's FAC are sufficient to show his disciplinary conviction was supported by not just "some evidence," *Hill*, 472 U.S. at 454-55, but by a "preponderance of evidence." ECF No. 30, Ex. 1, at 38. At bottom, Plaintiff's due process claims challenge the validity of his disciplinary conviction and Defendant Williams's determination that the evidence supporting a conclusion that he possessed morphine outweighed other evidence suggesting the positive toxicology results were not reliable and instead caused by the Tylenol 3 he has taken two days prior. However, the Fourteenth Amendment's Due Process Clause "does not give an inmate a right to have his proffered defense accepted by the hearing officer," *Inman v. Hatton*, 2018 WL 1100959, at *7 (N.D.

Cal. 2018), nor does it "require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Hill*, 472 U.S. at 457. Even where the evidence "might be characterized as meager," if "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary," those findings must be upheld. *Id.*; *see also Martinez v. Busby*, 2013 WL 1818268, at *7 (C.D. Cal. 2013) (report and recommendation to dismiss prisoner's due process / sufficiency of the evidence challenge to prison disciplinary conviction for use of a controlled substance in violation of Cal. Code Regs. tit. 15, § 3016(a)), *adopted*, 2013 WL 1800439 (C.D. Cal. 2013).

For all these reasons, the Court finds that Plaintiff has failed to allege facts sufficient to support a plausible claim for relief under the Fourteenth Amendment, and GRANTS Defendants' Motions to Dismiss his FAC on that basis pursuant to Fed. R. Civ. P. 12(b)(6).

D.    Eighth Amendment – Cruel and Unusual Punishment

To state an Eighth Amendment claim based on a deprivation of humane conditions of confinement, Plaintiff must allege facts sufficient to satisfy two requirements. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Iqbal*, 556 U.S. at 678.

"First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see also Peralta v. Dillard*, 744 F.3d 1076, 1091 (9th Cir. 2014). Prison conditions are not objectively serious unless they amount to "unquestioned and serious deprivations of basic human needs," or of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Wilson*, 501 U.S. at 298-300; *Grenning v. Miller-Stout*, 739 F.3d 1235, 1238 (9th Cir. 2014) (citation omitted). "After incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)) (internal quotations omitted). "[A]mong unnecessary and wanton inflictions of pain are those that are totally without penological justification." *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (internal quotations and citations omitted).

Second, Plaintiff's FAC "must contain sufficient factual matter" to demonstrate that the Defendants acted with a sufficiently culpable state of mind, that of "deliberate indifference." *Iqbal*, 556 U.S. at 678; *Wilson*, 501 U.S. at 303; *Peralta*, 744 F.3d at 1091. A prison official acts with deliberate indifference if he "knows of and disregards an excessive risk to the prisoner's health and safety." *Farmer*, 511 U.S. at 837. In other words, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists [to the prisoner], and [the prison official] must also draw the inference." *Id.*

Defendants Zamora, Paramo, Stratton, Covel, Williams, Sanchez, Salinas, Lopez, Murphy, and Frost also seek dismissal of Plaintiff's Eighth Amendment claims pursuant to Fed. R. Civ. P. 12(b)(6), arguing that his FAC fails to allege facts sufficient to show that any disciplinary punishment he suffered as a result of RVR Log No. FB-15-101 constituted objectively and sufficiently serious deprivations, or that any of them acted with deliberate indifference to any serious risk of harm. ECF No. 44-1 at 22-24.

Plaintiff claims that "as a result of [the] unlawful disciplinary procedures" employed by Defendants in response to his positive drug test, he suffered "cruel and unusual punishments." *See* ECF No. 30 at 16, 18-23. Specifically, Plaintiff contends Defendants knowingly relied on "false evidence" to support RVR Log No. FB-15-101, acted with "deliberate indifference" to his proferred defense, and subjected him to a 90-day loss behavioral credits, 10 day confinement to quarters, 90 days loss of "yard, dayroom, and phone privileges," "all his entertainment appliances," the "ability to work, attend vocation programs," and 6 months of contact visits. *Id.*

However, Plaintiff does not further allege that any of the punishments imposed as a result of his disciplinary conviction amount to objectively "unquestioned and serious deprivations of [his] basic human needs," or deprived him of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *Grenning*, 739 F.3d at 1238. So long as the institution "furnishes sentenced prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety," the objective requirements of the Eighth

Amendment are satisfied. *Norwood v. Woodford*, 661 F. Supp. 2d 1148, 1155 (S.D. Cal. 2009) (citing *Farmer*, 511 U.S. at 833; *Wright v. Rushen*, 642 F.2d 1129, 1132-33 (9th Cir. 1981)).

None of the deprivations Plaintiff suffered as a result of his positive urinalysis are alleged to have been "sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson*, 501 U.S. at 298; *Overton*, 539 U.S. at 136 (finding that while a 2-year visitation restriction based on in-prison substance abuse violations "undoubtedly makes the prisoner's confinement more difficult to bear, … [] it does not … fall below the standards mandated by the Eighth Amendment."); *Cooper v. Garcia*, 55 F. Supp. 2d 1090, 1099 (S.D. Cal. 1999) ("[D]enial of family visitation privileges does not constitute cruel and unusual punishment."); *Dunn v. Castro*, 621 F.3d 1196, 1202-03 (9th Cir. 2010) (finding no clearly established First, Eighth, or Fourteenth Amendment right to visitation) (citing cases); *see also Johnson v. Rink*, 2016 WL 2745412, at *4 (S.D. Cal. 2016) (dismissing prisoner's claims of having lost "evening yard," placement on "C" status, and confinement to quarters as a result of a disciplinary conviction for failing to submit to urinalysis as insufficient to state an Eighth Amendment claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A); *Hurd v. Scribner*, 2007 WL 1989688, at *14-15 (S.D. Cal. 2007) (finding prisoner's disciplinary conviction for refusing to submit a urine sample in violation of California Code of Regulations, title 15, § 3290(d), which resulted in his being subject to a "90-day credit forfeiture, a 30-day loss of telephone privileges, and a 10-day loss of yard privileges," insufficient to constitute cruel and unusual punishment).

Moreover, even if the restrictions placed on Plaintiff as the result of his disciplinary conviction were so grave as to deprive him of a basic human need, *see Wilson*, 501 U.S. at 298; *Rhodes*, 452 U.S. at 347, his FAC also fails to allege that any named Defendant knew those sanctions would pose a substantial or serious risk to either his health or safety, and then acted with "deliberate indifference" to that risk. *Farmer*, 511 U.S. at 837; *see also Hinkley v. Warner*, 616 F. App'x 255 (9th Cir. 2015) (affirming district court's sua sponte dismissal of prisoner's Eighth Amendment claim pursuant to 28 U.S.C. § 1915(e)(2) &

§ 1915A based on his "fail[ure] to allege facts sufficient to show that defendants knew of and disregarded a substantial risk of physical or mental harm … when he was selected for a random urinalysis drug test."); *Johnson*, 2016 WL 2745412, at *4 (dismissing Eighth Amendment claim based on disciplinary sanctions for failing to provide urine samples). "[T]here must be a conscious disregard of a serious risk of harm for deliberate indifference to exist." *Toguchi v. Chung*, 391 F.3d 1051, 1059 (9th Cir. 2004).

Finally, the Court notes that to the extent Plaintiff also contends, for the first time in his Opposition,[10] to have also been permitted only three hours of "outdoor recreation" per week as a result of his 90-days "C" status, *see* ECF No. 53 at 16-17, this new allegation nevertheless fails to sustain an Eighth Amendment violation.

"'[E]xercise is one of the basic human necessities protected by the Eighth Amendment,'" and "the constitutional adequacy of the exercise provided depends upon "the individual facts of each case." *Richardson v. Runnels*, 594 F.3d 666, 672 (9th Cir. 2010). Despite grappling with the issue for decades, "the Ninth Circuit has not identified 'a specific minimum amount of weekly exercise that must be afforded'" under the Eighth Amendment. *Jayne v. Bosenko*, No. 2:08–cv–02767–MSB, 2009 WL 4281995, at *8 (E.D. Cal. Nov. 23, 2009) (quoting *Pierce v. County of Orange*, 526 F.3d 1190, 1212 (9th Cir. 2008)); *Rogers v. Giurbino*, 625 F. App'x 779, 782 (9th Cir. 2015) (finding allegations that prisoner was "denied outdoor exercise for ten consecutive days three times, and one day every two or four days otherwise," insufficient to satisfy either prong of an Eighth Amendment claim.).

However, even assuming three hours of "outdoor recreation" per week over the course of a 90-day period would be sufficient to satisfy the Eighth Amendment's objective

---

[10] While the Court may not ordinarily consider new allegations in an Opposition to determine the propriety of a Rule 12(b)(6) motion, it may consider them in deciding whether to grant leave to amend. *See Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

requirements, Plaintiff further fails to allege that any of the named Defendants—all of whom participated in his urinalysis testing and April 2015 disciplinary proceedings, but are not alleged to have also been responsible for overseeing his subsequent conditions of confinement—was aware that his "outdoor recreation" opportunities were so limited and yet acted with deliberate indifference to a substantial risk that he would be seriously harmed as a result. *See Farmer*, 511 U.S. at 834; *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (noting in the context of an Eighth Amendment outdoor exercise claim, that the prisoner "must show that the prison officials were aware of a 'substantial risk of serious harm'" to his health and safety," *and* that prison officials had no "'reasonable justification for the deprivation, in spite of that risk.'"); Cal. Code Regs., tit. 15 § 3331(h) ("Inmates undergoing disciplinary detention will be permitted a minimum of one hour per day, five days per week, of exercise outside their cells *unless security and safety considerations preclude such activity*.") (emphasis added); *see also Lopez v. Allison*, No. 1:13-CV-02010-AWI, 2014 WL 5325348, at *4 (E.D. Cal. Oct. 17, 2014) (finding no Eighth Amendment violation even though prisoner's claims of having been deprived of outdoor exercise for eighteen months were "sufficiently serious," but where he failed to further specify how any of the named Defendants were responsible for the deprivation).

For all these reasons, the Court finds that Plaintiff has also failed to allege facts sufficient to support a plausible claim for relief under the Eighth Amendment, and GRANTS Defendants Stratton, Salinas, Sanchez, Paramo, Covel, Frost, Zamora, Williams, Lopez, and Murphy's Motion to Dismiss his FAC on that basis pursuant to Fed. R. Civ. P. 12(b)(6).

E.     Remaining Arguments

Defendant Paramo also seeks dismissal of Plaintiff's FAC based on his failure to allege facts sufficient to demonstrate his personal involvement, *see* ECF No. 44-1 at 24-25; Defendants Frost, Stratton and Murphy argue their role in reviewing Plaintiff's CDCR 602 appeal is insufficient to demonstrate they personally caused any violation of Plaintiff's constitutional rights, *id.* at 25-26; and Defendants Stratton, Salinas, Sanchez, Paramo,

Covel, Frost, Zamora, Williams, Lopez, and Murphy all request dismissal of Plaintiff's requests for declaratory and injunctive relief as moot (due to his transfer from RJD), and unavailable (because he seeks a declaratory judgment based only on allegations of past harm). *Id.* at 26-27. Because the Court has found that Plaintiff's FAC fails to state either a Fourteenth or Eighth Amendment claim as to any Defendant, however, it need not decide whether Plaintiff's pleading must also be dismissed for these additional reasons.

F.    Leave to Amend

Although leave to amend is liberally granted if a pleading can possibly be cured by additional factual allegations, *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995), "[d]ismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008).

Because Plaintiff has already been granted leave to amend his pleading in lieu of an opposition and in response to Defendants' Motion to Dismiss his original Complaint, *see* ECF No. 23, the Court finds further amendment would be futile. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (district court's discretion to deny leave to amend is particularly broad where it has afforded plaintiff one or more opportunities to amend, but to no avail); *Harper v. Schwarzenegger*, 613 F. App'x 648 (9th Cir. 2015).

## IV.    Conclusion and Orders

Accordingly, the Court **GRANTS** both Defendant Wiley's and Defendants Stratton, Salinas, Sanchez, Paramo, Covel, Frost, Zamora, Williams, Lopez and Murphy's Motions to Dismiss Plaintiff's First Amended Complaint for failing to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (ECF Nos. 43, 44) and **DENIES** further leave to amend as futile.

The Clerk shall enter judgment accordingly and close the file.

**IT IS SO ORDERED**.

Dated:  September 25, 2018

_____
Hon. Barry Ted Moskowitz, Chief Judge
United States District Court

3:16-cv-02931-BTM-KSC